# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BRIAN DOLAN

**DEFENDANTS**
AERO MICRONESIA, INC. dba ASIA PACIFIC AIRLINES

(b) County of Residence of First Listed Plaintiff: Guam
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Guam
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

THE LAW OFFICE OF JOHN RICHARD BORDALLO BELL
341 S. Marine Corps Dr. RK Plaza Suite 309, Tamuning, Guam 96913
Tel: (671) 646-5722; john.r.b.bell@gmail.com

Attorneys *(If Known)*
STEVEN P. PIXLEY
TSL Plz 3rd Fl. Saipan, MP 96950
Tel: (6700 483-5040

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 480 Consumer Credit |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC 1981, Title VII

Brief description of cause: complaint regarding Employment Discrimination and Retaliation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ $100,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 4/18/17
SIGNATURE OF ATTORNEY OF RECORD: /s/ JRB Bell

**FOR OFFICE USE ONLY**
RECEIPT #___ AMOUNT___ APPLYING IFP___ JUDGE___ MAG. JUDGE___

The Law Office of
**John Richard Bordallo Bell**
341 S. Marine Corps Drive
RK Plaza Suite 309
Tamuning, Guam 96913
Tel: (671) 646-5722
john.r.b.bell@gmail.com

*Attorney for Plaintiff Brian Dolan*

IN THE DISTRICT COURT OF GUAM

----------------

| | |
|---|---|
| BRIAN DOLAN,<br><br>Plaintiff,<br><br>vs.<br><br>AERO MICRONESIA, INC. dba ASIA PACIFIC AIRLINES | CIVIL CASE NO. CV_____<br><br>**VERIFIED COMPLAINT;<br>DEMAND FOR JURY TRIAL** |

## I. <u>Jurisdiction</u>

1. This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331 (Federal Question).

2. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, for employment discrimination and retaliation based on Plaintiff's national origin.

3. Jurisdiction is further conferred on this Court by 42 U.S.C. Section 2000e(5). Equitable and other relief are also sought under 42 U.S.C. 2000e(5)(g).

4. Jurisdiction is also based on 28 U.S.C. Sections 1343 and 42 U.S.C. Sections 1981 *et seq* and this Court may exercise supplemental jurisdiction of any related territorial based claims.

5. Plaintiff has complied with all conditions precedent to maintain an action under Title VII and 42 USCA §2000e, et seq, to wit:

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 1

6. On November 9, 2015, Plaintiff filed EEOC Charge of Discrimination No. 34G-2016-00004 regarding national origin discrimination, as further described herein.

7. On April 8, 2016, Plaintiff submitted a second EEOC Charge with the EEOC's Honolulu Office, this time adding the claim of retaliation.

8. On or about January 25, 2017, a Notification of Right to Sue regarding Plaintiff's charges against Defendant was received from the EEOC.

9. This complaint has been filed within ninety (90) days of the receipt of the Notification of Right to Sue.

## II. Factual Background

10. Plaintiff Brian Dolan ("Dolan") (born 12/14/73) has been a pilot with Defendant Asia Pacific Airlines ("APA") since April of 2003.

11. Dolan is of Marshallese descent, remains a citizen of the Republic of the Marshall Islands, and is lawful to work in the U.S.

12. APA is the business name of Aero Micronesia, Inc, which, in turn, is a wholly owned subsidiary of Tan Holdings Corporation.

13. APA's principal place of business is in and around the Guam International Airport.

14. APA provides cargo and charter services mainly in and around the Pacific region with a small fleet of 727 and 757 type aircraft and approximately 20 pilots and flight engineers.

15. During Dolan's employment with APA, APA has had no employment handbook and no human resources department.

16. When Dolan first began working for APA in 2003, he started out as a First Officer (aka co-pilot) working under then-Chief Pilot Alicia Atalig [believed to be of Chamorro descent].

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 2

17. In approximately 2008, after Atalig departed from APA, Dolan became treated like the 'black sheep' of APA.

18. For example, in 2008 or 2009, Captain Joe San Agustin [believed to be Chamorro], Dolan (as First Officer), and Flight Engineer Charlie Canton [believed to be Caucasian] were being sent on Korean Air to Taiwan to pick up APA's aircraft.

19. When Dolan got to the airport, Canton was dressed nicely and asked why Dolan wasn't dressed up because San Agustin called Canton the night before and said they were being flown first class.

20. Dolan checked in and learned he was in coach. Dolan wrote to then President Mike Quinn [believed to be Caucasian] about this incident because Dolan felt humiliated and degraded.

21. Quinn's reply was, "what did you expect? Everyone to overnight in Taiwan? Flip coins? What?"

22. Per industry standards and APA's own traditional seniority system, First Officers outrank Flight Engineers.

23. Before Dolan was promoted from First Officer to Captain, he was passed over by men hired from outside the company such as Andy Chen [believed to be of Chinese descent] and John Borth [believed to be Caucasian], but both men were employed only for a short time.

24. In 2010, after an unusually long period of seven years as a First Officer, despite never failing a training and having excellent marks, Dolan was finally upgraded to Captain.

25. In March of 2011, after Dolan had surgery on a broken hand, APA threatened to suspend him indefinitely if he did not meet his training schedule, despite the fact other pilots not of Marshallese descent had multiple opportunities to adjust training schedules due to their failing the trainings.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 3

26. In 2012, when Dolan was hired at Saipan Air, which is also owned by Tan Holdings Corporation, he took a two month leave of absence to gain his 757 rating.

27. However, Dolan returned to APA within a matter of months because Saipan Air didn't pan out as a company.

28. In approximately 2012 or 2013, Chief Pilot Craig Holmes [believed to be Caucasian] actually shut down APA's operations for a day due to safety concerns, suffering no adverse action as a result.

29. In approximately November of 2014, APA hired Scott Davis, a pilot who is also of Marshallese descent.

30. Unlike Dolan, Davis is a U.S. citizen, and Dolan believes Davis was hired notwithstanding his Marshallese heritage only because pilot Randy Goodman's [believed to be mostly Caucasian] wife and Davis' wife are friends and flight attendant colleagues.

31. By at least January of 2015, APA had begun the process of bringing Boeing 757 series aircraft into service as part of a fleet modernization and expansion.

32. That same year, Dolan was told by then-President Mike Quinn [believed to be Caucasian] he would be a Captain and Check Airman [an aircraft pilot who performs an oversight, safety and qualification role for commercial pilots undergoing evaluation] as soon as the 757's were acquired.

33. On August 11, 2015, Dolan ferried a new 757 from Phoenix to Honolulu with pilot Jim Young [believed to be Caucasian] who was specially hired to ferry the 757.

34. Shortly thereafter, Dolan raised safety concerns with Director of Operations Ralph Freeman [believed to be Caucasian] about APA pilots, himself included, operating the 757's with little flight experience.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 4

35. Although Dolan expressed his concerns in multiple exchanges with APA management, he never said he did not want to fly the 757's.

36. In fact, on the 26th or 27th of September of 2015, Dolan met with Freeman to reiterate that he wanted to be part of the 757 team.

37. During this meeting, despite his earlier agreement to present, APA President Robert Walker [believed to be Caucasian] refused to meet with Dolan, claiming he was "in the shower."

38. In late September 2015, Dolan was taken off the flight schedule completely from October 21 to October 31 and replaced with Caucasian pilots.

39. Dolan was effectively demoted to being a 727 pilot while less senior Caucasian pilots were promoted to fly the 757 aircraft.

40. Given Dolan's seniority, some of Dolan's pilot colleagues spontaneously called him to ask him what was going on with the schedule.

41. On November 4, 2015, Dolan relayed his concerns to the Fair Employment Practices Agency ("FEPA") office at the Guam Department of Labor.

42. On November 9, 2015, based on advice from staff at the FEPA office, Dolan filed an EEOC charge of discrimination based on his being of Marshallese origin.

43. In March of 2016, when Dolan reported that he was sick and unable to work, APA demanded doctors' notes for the last three times Dolan called in sick.

44. To Dolan's knowledge, APA has no written procedure for calling in sick and had previously never demanded medical documentation of any illness from any pilots.

45. Notwithstanding that Dolan's actions were nothing unusual or out of standards, Vice President of Marketing Adam Ferguson [believed to be Caucasian] told Chief Pilot Scott

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 5

Yoder [believed to be Caucasian] that Dolan's illness communications were "lame" and Dolan was scolded by APA management for calling in sick.

46. Yoder demanded Dolan "need[ed] a more expansive declaration" from his doctor; that Dolan needed to prove more than "I am sick" via doctors' notes.

47. On March 22, 2016 Dolan operated his 727 during a flight to Honolulu, according to APA's subsequent accusations, "at the wrong altitude...causing the aircraft to use an excessive amount of fuel...plac[ing] the crew and aircraft in danger."

48. In fact, Dolan followed the flight plan exactly and, if not for a fuel leak, he would have landed with an additional 10,000 lbs of fuel.

49. On March 23, 2016, Dolan emailed Freeman that flying to Honolulu with a broken fuel tank in the first place was a foolish and dangerous move and also relayed that Ferguson put profits over safety in pressuring Dolan and his crew to take unnecessary risks.

50. On March 24, 2016, Dolan emailed then Assistant Director of Operations Don Roney [believed to be Caucasian] that Ferguson threatened that Dolan *must* get on the 319 [the plane leaking fuel] or "That['s] it," Dolan would be left stranded in Honolulu and would have to find his own way home.

51. Freeman had also threatened, "I guess you're fired then" when Dolan refused to fly on the plane leaking fuel.

52. On or about March 25, 2016, the flight schedule designated Dolan as 'xxxxx' for March 26th and 27th of 2016.

53. This caused other pilots to call Dolan to ask if he was fired.

54. Dolan believes Jason Joson [believed to be Filipino] wrote the schedule at this time.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 6

55. The Honolulu FAA personnel can confirm that they conducted a ramp check, confirmed a broken fuel tank was leaking fuel and, in fact, grounded the 727 as unsafe to fly.

56. On the evening of March 27, 2016, Director of Safety Richard Brown [believed to be Caucasian] emailed Roney that Dolan [supposedly] had not replied to his March 21st or 22nd 2016 calls or emails to ensure the Fatigue Risk Management Plan was followed and that Dolan was well rested.

57. Under FAA standards, Dolan was then not obligated to be contact in contact with APA.

58. The next day, March 28, 2016, Roney and Walker issued Dolan written discipline.

59. This "Final Written Warning" accused Dolan of "sub-standard performances in the execution of [Dolan's] Captain – PIC [Pilot in Command]" duties.

60. The discipline cited that Dolan had supposedly failed on March 21st and 22nd of 2016 to answer telephone calls or emails despite being adequately rested for new flight assignments.

61. The March 28, 2016 discipline further alleged Dolan failed to timely report at 1200 local time for the March 22nd flight, that Dolan had flown at the wrong altitude, and that he did not follow the flight plan.

62. These charges are all false and without merit.

63. Dolan was further disciplined <u>in writing</u> by APA, according to APA's records, for sending the March 23, 2016 email regarding his safety concerns about flying with a leaking fuel tank "to ALL, including the FAA."

64. Dolan was also disciplined for his March refusal to fly the same 727 with the fuel leak and APA further noted 17 additional documents from Dolan's personnel record which Dolan is not privy to.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 7

65. In contrast, when pilots Patrick Bartosz [believe to be Caucasian] and Garret Suga [believed to be Hawaiian] refused to take a flight out of Majuro due to safety concerns, APA bought them each a ticket on United Airlines.

66. In contrast, after Bartosz and Suga refused the Majuro flight, they were nonetheless promoted to the 757 program.

67. In Dolan's many years of experience at APA, virtually everyone has complained about safety issues at some time or another without any retaliation or punishment.

68. On March 29, 2016, Dolan filled out another EEOC intake questionnaire alleging, *inter alia*, retaliation based on his calling in sick being "lame," and APA's unusual demands for substantial medical documentation of his illnesses, specifically pointing to superior treatment of similarly situated individuals, namely Indian (South East Asian) Flight Engineer Bud Shivji, San Agustin, Suga, and Davis, who had also called in sick around this time.

69. While Davis is also Marshallese, Davis, unlike Dolan, did not file an EEOC claim of discrimination nor did he file safety related grievances so far as Dolan is aware.

70. Since July of 2016, against routine procedure, Dolan had been taken off the schedule for special flights to preferred destinations such as Miami which are normally given to senior pilots such as Dolan.

71. On August 23, 2016, a flight scheduled for 8:30pm to Korror, Palau was cancelled by Dolan due to bad weather.

72. This cancellation went against the wishes of Ferguson, who made Dolan's crew wait until 2:30am the next morning before they could go home.

73. The crew took this as punishment by Ferguson.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 8

74. On August 24, 2016, Yoder began investigating Dolan's decision to cancel the previous night's flight despite Yoder's agreement at the time that Dolan was right to cancel the flight.

75. In an email on August 30, 2016 at 11:20am, Freeman admitted to Dolan, "I am concerned with the management involvement of that evening and I will address it."

76. At 11:32 am that day, Brown emailed Dolan that he could file a Safety Report on Baldwin [an internal safety reporting procedure].

77. In the email, Brown stated, "….I became involved after Jason [Joson] and Adam [Ferguson] called me…told Adam [Ferguson] flight should have left @6am with crew allowed to return 5am well rested…This is an ongoing investigation."

78. A September 13, 2016 email at 2:31pm from First Officer Randy Kohler [believed to be Caucasian] to Dolan summarized Kohler's verbal conversation with Yoder.

79. Kohler stated he had informed Yoder that Yoder was mistaken; Dolan did not refuse to fly after the weather had improved on August 24, 2016.

80. Kohler corroborated Dolan's account that Ferguson had applied pressure, via Joson, to coerce Dolan's crew to fly despite severe weather conditions.

81. According to Kohler, "Capt. Dolan calmly and professionally pointed out in detail why the aircraft could not LEGALLY depart."

82. Kohler was surprised Ferguson called Skyplan because the "VP of Marketing" was not on the on list of people eligible to deal with Skyplan.

83. Kohler noted, "I was surprised that Mr. Ferguson would interfere with the decisions of not only a Captain, but also a Check Airman…[In 20 years in the industry] I have never seen anything like this…."

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 9

84. Kohler added that shortly after the crew refused to fly, Ferguson told them they had to stay in the office all night, Mr. Brown the Director of Safety was called and Brown said they were trying to find another Captain to take the flight.

85. Kohler replied the weather was the problem, not the Captain, and that they would have to replace Kohler as well because Kohler supported Dolan's decision.

86. On September 26, 2016, Dolan performed a line check with Goodman.

87. Goodman did not take the line check seriously; he played solitaire on his iPad while Dolan was supposed to be testing him.

88. Because Goodman did not perform adequately, Dolan wanted Goodman to retake the line check.

89. Goodman was investigated and is currently suspended by the FAA for previous issues.

90. While Dolan was off the following week, APA would allege Dolan did not answer calls from management.

91. Dolan denies needing to answer any calls the following week while Dolan was off, but believes that at this time APA wanted Dolan to unduly relax his safety standards to pass Goodman despite Goodman's failing his line check.

92. On October 5, 2016, regarding the September 26, 2016 line check, Freeman emailed Dolan, "Chief Pilot Scott Yoder recently spoke with Goodman to discuss his performance and attitude and also counseled Captain Goodman."

93. Dolan responded to acknowledge he did pull down a shade to block Goodman's view in order to simulate a low visibility 'instrument approach.'

94. Dolan added that this was in line with what other APA check airmen had done with Dolan in the past.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 10

95. As confirmed by an October 28, 2016 email at 10:23 am, APA took Dolan completely off the schedule for November of 2016.

96. After this was reported to the FAA's Clarence Kanai, as confirmed by an e-mail at 11:44am on the same day, APA revised the November schedule to put Dolan back on a more normal schedule, but still without the special flights normally given to a pilot with Dolan's seniority.

97. On February 26, 2017, Dolan emailed Freeman, "my check Airman currency [authorization to conduct line checks] has been overdue since November 2016…FAA…came out to Guam last month and was unable to do a line check [on] me [to make sure Dolan met FAA standards before he was authorized to make sure *others* met FAA standards]…do you know when my FAA line check will be?"

98. On February 28, 2017, Freeman sidestepped Dolan's question by responding, "The B-727 staffing is strained right now along with the scheduling being challenged until a B-757 returns to the operation."

99. In fact, APA could have easily coordinated with the FAA to schedule Dolan's line check.

100. In March of 2017, according to APA records, APA was expected to have a second 757 aircraft in operation.

101. On April 4, 2017, Freeman purported to revoke Dolan's position as APA's check airman.

102. This action, at the very least, reduces Dolan's pay and his prestige as a pilot.

### III. Legal Claims

103. APA, its agents, servants or employees, by their conduct alleged herein, intentionally, willfully, and without justification deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws of the United States and the territory of Guam.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 11

particularly the right to be free from unlawful discrimination and retaliation in his employment.

### Count I: Discrimination Under Title VII and 42 USC § 1981 Based on Dolan's Marshallese National Origin and Micronesian Race

104. Here, Dolan suffered adverse employment actions including but not limited to being ousted from the 757 program, taken off the schedule, denied special flights, threatened with termination, disciplined for spurious and pretextual allegations, and essentially fired as a check airman.

105. Dolan's race and national origin, as indicated by the way APA and its employees have treated Dolan compared to the way APA generally treats others of different races and national origins, have been a motivating factor for these adverse actions.

106. APA's stated reasons for its adverse employment actions are not the true reasons but instead are a pretext to cover up for race and national origin discrimination.

107. But for APA's discriminatory animus against Marshallese/Micronesians, Dolan would not have suffered the adverse actions described above.

### Count II: Retaliation Under Title VII and 42 USC § 1981 for Reporting Unlawful Discrimination Based on Dolan's Marshallese National Origin and Micronesian Race

108. Here, since Dolan spoke up against and filed a charge regarding discrimination based on his status as a Micronesian who is Marshallese, APA subjected Dolan to adverse employment actions including but not limited to being ousted from the 757 program, taken off the schedule, denied special flights, threatened with termination, disciplined for spurious and pretextual allegations, and essentially fired as a check airman, which any reasonable employee also would have found to be materially adverse.

VERIFIED COMPLAINT; DEMAND FOR JURY TRIAL - 12

109. APA would not have taken the adverse actions described above but for Dolan's having spoken up against and filed a charge regarding discrimination based on his status as a Micronesian who is Marshallese.

WHEREFORE, Plaintiff requests that this Court:

1. Provide Plaintiff with a civil trial by jury.
2. Award Plaintiff compensation for general damages in accordance with the law.
3. Award Plaintiff punitive damages in accordance with the law.
4. Award Plaintiff his reasonable attorney's fees.
5. Award Plaintiff his costs and disbursements.
6. Award Plaintiff any and all other relief this Court deems just and proper.

Respectfully submitted at Hagatna, Guam on this 17th day of April, 2017.

*The Law Office of John Richard Bordallo Bell*

By /S/ _____

John Richard Bordallo Bell, Esq.

## VERIFICATION OF COMPLAINT

The undersigned swears under penalty of perjury under the laws of Guam and the United States that the foregoing is true and correct to his own knowledge, except as to matters which are therein stated on his information of belief as to those matters he believes them to be true.

_____
Brian Dolan, Plaintiff

4/17/17
_____
Dated

# DISTRICT COURT OF GUAM

| | |
|---|---|
| BRIAN DOLAN )<br>　　　　　*Plaintiff* )<br>　　　　v. )<br>AERO MICRONESIA, INC. dba. ASIA PACIFIC AIRLINES )<br>　　　　*Defendant* ) | Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Aero Micronesia, Inc. dba ASIA PACIFIC AIRLINES
Resident Agent: GEORGE CHIU
306 Tumon Vista
Tamuning, Guam 96913

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: THE LAW OFFICE OF JOHN RICHARD BORDALLO BELL
341 S. Marine Corps Drive,
RK Plaza, Suite 309
Tamuning, Guam 96913
Tel: (671) 646-5722
john.r.b.bell@gmail.com

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____    _____
　　　　　　　　　　　　　　　　　　　*Signature of Clerk or Deputy Clerk*

# UNITED STATES DISTRICT COURT
for the

District of Guam

| | |
|---|---|
| BRIAN DOLAN | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| AERO MICRONESIA, INC. dba ASIA PACIFIC AIRLINE | ) |
| *Defendant* | ) |

## WAIVER OF THE SERVICE OF SUMMONS

To: John Richard Bordallo Bell
*(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from April 18, 2017, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date: _____

_____
*Printed name of party waiving service of summons*

_____
*Signature of the attorney or unrepresented party*

John Richard Bordallo Bell
*Printed name*

341 S. Marine Corps Drive,
RK Plaza, Suite 309
Tamuning, GU 96913
*Address*

john.r.b.bell@gmail.com
*E-mail address*

(671) 646-5722
*Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.